NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROY HOROWITZ, LINDA LARSON, KEMPTEN POLLARD, KATHERINE SEAMAN, and KATHLEEN SWEENEY, <br><br>Plaintiffs,<br>v.<br><br>AT&T INC., AT&T CORP., AT&T SERVICES, INC., and AT&T MOBILITY SERVICES LLC,<br><br>Defendants. | Civil Action No. 3:17-cv-4827-BRM-LHG<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is AT&T Corp. ("AT&T Corp."), AT&T Mobility Services, LLC's ("AT&T Mobility"), and AT&T Services, Inc.'s ("AT&T Services") (collectively, "Defendants") Motion to Compel Arbitration of Individual Claims and Stay Proceedings. (ECF No. 28). Plaintiffs Roy Horowitz ("Horowitz") and Kathleen Sweeney ("Sweeney") (collectively, "Plaintiffs") oppose the Motion. (ECF No. 81.) Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below, and for good cause shown, the Motion to Compel Arbitration is **GRANTED**.

# I. BACKGROUND

## A. Factual Background

This lawsuit involves violations of the Age Discrimination in Employment Act ("ADEA") in which, it is alleged, Defendants engaged in a "company-wide plan" to replace the aging

workforce in Defendants' corporations with a younger one by the year 2020 (the "2020 Scheme"), with a three-step "surplus" then termination and fraudulent release scheme. (*See* Compl. (ECF No. 1).) However, the merits of this allegation are not currently before this Court. The Court is called upon solely to evaluate the enforceability of an arbitration agreement.

Horowitz was hired by AT&T in December 1995 and was employed at the company for more than twenty years before his termination effective June 21, 2016, at the age of fifty-six. (*Id.* ¶ 141.) Sweeney was hired by AT&T in November 1997 and was employed at the company for more than eighteen years before her termination effective July 22, 2016, at the age of fifty-one. (*Id.* ¶ 216.)[1]

On December 4 and 5, 2011, AT&T sent Horowitz and Sweeney, respectively, an email to their AT&T email address, advising them that:

> AT&T has created an alternative process for resolving disputes between the company and employees. Under this process, employees and the company would use independent, third-party arbitration rather than the courts or juries to resolve legal disputes. Arbitration is more informal than a lawsuit in court, and may be faster.
>
> The decision on whether or not to participate is yours to make. To help you make your decision, **it is very important for you to review the Management Arbitration Agreement linked in this email**. It provides importation information on the process and the types of disputes that are covered by the Agreement.
>
> Again, the decision is entirely up to you. To give you time to consider your decision, the company has established a deadline of no later than 11:59 p.m. Central Standard time on Monday, Feb. 6,

---

[1] Defendants take the position that Horowitz was specifically hired by AT&T Corp. and Sweeney by AT&T Mobility. (ECF No. 81 at 3 and *see* ECF No. 23.)

> 2012 to opt out – that is, decline to participate in the arbitration process – using the instructions below.
>
> If you do not opt out by the deadline, you are agreeing to the arbitration process as set forth in the Agreement. This means that you and AT&T are giving up the right to a court or jury trial on claims covered by the Agreement.
>
> Instructions for "Opting Out" of the Agreement:
>
> To opt out of the agreement, after you open the attached document, follow the link provided there to the site where you will be able to electronically register your decision to opt out.
>
> Remember, this decision is yours. There are no adverse consequences for anyone opting out of the Management Arbitration Agreement. If, contrary to this assurance, you believe you have experienced any pressure or retaliation in connection with your decision, please contact the AT&T Hotline (888-871-2622).
>
> If you have any questions about the Agreement, please contact OneStop (Dial 1-888-722-1787, then speak "Employee Service Hotline").
>
> Important: February 6, 2012 is the deadline to act if you do not wish to resolve disputes through arbitration.

(ECF No. 28-3 at 54.) The Management Arbitration Agreement ("Arbitration Agreement") stated, in relevant part:

> **Summary**
>
> Under this Agreement, you and the AT&T company that employs you ("the Company") agree that any dispute to which this Agreement applies will be decided by final and binding arbitration instead of court litigation. . . .
>
> **How This Agreement Applies**

3

This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 and following, and evidences a transaction involving commerce. This agreement applies to any claim that you may have against any of the following: (1) any AT&T company, (2) its present or former officers, directors, employees or agents in their capacity as such or otherwise, (3) the Company's parent, subsidiary and affiliated entities, and all successors and assigns of any of them; and this agreement also applies to any claim that the Company or any other AT&T company may have against you. Unless stated otherwise in this Agreement, covered claims include without limitation those arising out of or related to your employment or termination of employment with the Company and any other disputes regarding the employment relationship, trade secrets, unfair competition, compensation, breaks and rest periods, termination, defamation, retaliation, discrimination or harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Genetic Information Non-Discrimination Act, and state statutes and local laws, if any, addressing the same or similar subject matters, and all other state and local statutory and common law claims. This Agreement survives after the employment relationship terminates. Nothing contained in this Agreement shall be construed to prevent or excuse you from utilizing the Company's or employee benefit plans' existing internal procedures for resolution of complaints.

Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court. This Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of a court or jury trial. Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Agreement, but not as to the enforceability, revocability or validity of the Agreement or any portion of the Agreement, which shall be determined only by a court of competent jurisdiction.

. . . .

**Limitations on How This Agreement Applies**

> . . . .
>
> **To the maximum extent permitted by law, you hereby waive any right to bring on behalf of persons other than yourself, or to otherwise participate with other persons in: any class action; collective action; or representative action, including but not limited to any representative action under the California Private Attorneys General Act ("PAGA") or other, similar state statute. You retain the right, however, to bring claims in arbitration, including PAGA claims, but only for yourself as an individual. If a court determines that you cannot waive your right to bring a representative action under PAGA, any such claim may only be brought in court and not in arbitration.**

(ECF No. 28-6 at 14-15 (emphasis in original).)

The emails were successfully transmitted and received by Plaintiffs. (ECF No. 81 at 3 (conceding that the "initial e-mails containing a hyperlink to the [Arbitration] Agreement were sent by 'AT&T' to Horowitz and Sweeney on December 4, 2011 and December 5, 2011, respectively").) Plaintiffs further "acknowledge that reminder e-mails were sent by 'AT&T' to Horowitz on December 16, 2011 and January 17, 2012 and to Sweeney on December 15, 2011 and January 18, 2012." (*Id.*) AT&T's records indicate that both Plaintiffs clicked on the hyperlink in the email and accessed the webpage containing the text of the Arbitration Agreement. (ECF No. 28-6 ¶¶ 11-12.) Nevertheless, Plaintiffs did not opt out of the Agreement.

Sweeney "has no recollection of ever viewing or opening the e-mails," "no recollection of ever opening or viewing the Agreement itself," and "denies ever acknowledging to Defendants that she fully read or fully understood the Agreement." (*Id.* at 4.) In addition, both Plaintiffs "deny ever being told that their continued employment with Defendants, past the opt-put deadline of February 6, 2012, constituted an acceptance of the Agreement." (*Id.*) Lastly, "both Sweeny and

Horowitz never took any affirmative steps to indicate their acceptance of the Agreement to Defendants." (*Id.*) However, as part of their employment, Plaintiffs were "required . . . to monitor [their] AT&T email address and respond appropriately to emails." (ECF No. 28-2 ¶ 6 and ECF No. 28-4 ¶ 6.)

### B. Procedural Background

On June 29, 2017, Plaintiffs filed a Complaint against Defendants alleging: (1) a violation of the ADEA, based on disparate treatment; (2) a violation of the ADEA, based on disparate impact; and (3) a violation of the OWBPA. (*See* ECF No. 1.) On September 25, 2017, Defendants filed three motions: (1) AT&T Inc. filed a Motion to Dismiss for Lack of Jurisdiction; (2) AT&T Services and AT&T Mobility filed a Motion to Dismiss for lack of jurisdiction as to Plaintiffs Larson and Pollard's claims; and (3) AT&T Corp., AT&T Services, and AT&T Mobility filed a Motion to Dismiss for failure to state a claim. (ECF Nos. 21-23.) On September 28, 2017, Defendants filed a Motion to Compel Arbitration of Individual Claims and Stay Proceedings for Plaintiffs. (ECF No. 28.) Plaintiffs oppose the Motion to Compel. (ECF No. 81.)[2] On April 25, 2018, the Court denied AT&T Inc's Motion to Dismiss for lack of jurisdiction, granted AT&T Services and AT&T Mobility's Motion to Dismiss Linda Larson and Kempton Pollard's claims for lack of jurisdiction, denied AT&T Corp., AT&T Services, and AT&T Mobility's Motion to Dismiss for failure to state a claim as to the class action claims but granted it as to all other requests. (ECF No. 61 and 62.) On May 9, 2018, Plaintiffs, Linda Larson, Kempten Pollard, and Katherine

---

[2] On October 24, 2017, the Court administratively terminated the Motion to Compel Arbitration pending the resolution of the motions to dismiss. (ECF No. 37.)

Seaman filed a Motion for Reconsideration. (ECF No. 65.) Defendants oppose that motion (ECF No. 73), which will be decided in a separate opinion. On May 29, 2018, Linda Larson and Kempton Pollard voluntarily dismissed their claims against all Defendants. (ECF No. 77 and 78.)

**II. LEGAL STANDARD**

"In considering a motion to compel arbitration, a court must engage in a two-step analysis: it must determine first whether there is a valid agreement to arbitrate and, if so, whether the specific dispute falls within the scope of said agreement." *Thomas v. Jenny Craig, Inc.*, No. 10–2287, 2010 WL 3076861, at * 3 (D.N.J. Aug.4, 2010) (citing *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009); *Salvadori v. Option One Mtg. Corp.*, 420 F. Supp. 2d 349, 356 (D.N.J. 2006)). "In doing so, the Court utilizes the summary judgment standard of Federal Rule of Civil Procedure 56(c)." *Id.* (citing *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980)).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's

evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3rd Cir. 1991) (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), *cert. denied*, 474 U.S. 1010 (1985)); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

"Therefore, a court must first determine whether there is a genuine issue of material fact as to whether a valid arbitration agreement exists." *Jayasundera v. Macy's Logistics & Operations, Dep't of Human Res.*, No. 14-7455, 2015 WL 4623508, at *2 (D.N.J. Aug. 3, 2015). In making this determination, the party opposing arbitration receives "the benefit of all reasonable doubts and inferences that may arise." *Id.* "In examining whether certain claims fall within the ambit of an arbitration clause, a court must 'focus . . . on the factual allegations in the complaint rather than the legal causes of action asserted.'" *Id.* (quoting *Mutual Ben. Life Ins. Co. v. Zimmerman*, 783 F. Supp. 853, 869 (D.N.J. 1992) (citation omitted)). If the court determines that the claims in dispute fall within the scope of the arbitration agreement, the court must "refer the dispute to arbitration without considering the merits of the case." *Id.*

**III. DECISION**

Defendants' Motion to Compel Arbitration turns on whether the Arbitration Agreement is enforceable against Plaintiffs. (*See* ECF No. 28-2.) Plaintiffs do not dispute they received the Arbitration Agreement, or what it purports to cover. Instead, they argue they never affirmatively agreed to be bound by the Arbitration Agreement and that their failure to opt out of the Arbitration Agreement cannot be considered consent. (*See* ECF No. 81.) Defendants, however, argue Plaintiffs agreed to the Arbitration Agreement by receiving the email, clicking on the hyperlink in the email and accessing the webpage containing the text of the Arbitration Agreement, and dialing to opt out of the Arbitration Agreement. (ECF No. 28-2 at 12-16.)

As a preliminary matter, Defendants filed the instant Motion to Compel Arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq*. ("FAA") because the Arbitration Agreement, by its express terms, is governed by the FAA. (ECF No. 28-2 at 9.) Federal law presumptively favors the enforcement of arbitration agreements. *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999). The FAA directs federal courts to compel arbitration of claims "arising out of" a valid agreement to arbitrate. The FAA was enacted "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Under the FAA, agreements to arbitrate are "valid, irrevocable, and enforceable," subject only to traditional contract principles. 9 U.S.C. § 2; *see also CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012) (citations omitted) (explaining the FAA favors arbitration agreements and "requires courts

to enforce agreements to arbitrate according to their terms"). The FAA provides that contract provisions manifesting the intent of the parties to settle disputes in arbitration shall be binding, allows for the stay of federal court proceedings in any matter referable to arbitration, and permits both federal and state courts to compel arbitration if one party has failed to comply with an agreement to arbitrate. 9 U.S.C. §§ 2-4. Cumulatively, those provisions "manifest a liberal federal policy favoring arbitration agreements." *Gilmer*, 500 U.S. at 24 (quotations omitted).

"[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Townsend v. Pinnacle Entm't, Inc.*, 457 F. App'x 205, 207 (3d Cir. 2012). Thus, a motion to compel arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 333 (2011) ("[C]ourts must place arbitration agreements on equal footing with other contracts and enforce them according to their terms.").

As previously stated, in considering a motion to compel arbitration, a court must engage in a two-step analysis: (1) it must determine first whether there is a valid agreement to arbitrate and, if so, (2) whether the specific dispute falls within the scope of said agreement. *See Century Indem. Co.*, 584 F.3d at 523; *Salvadori*, 420 F. Supp. 2d at 356. In considering the first inquiry, the court must "apply the relevant state contract law to questions of arbitrability, which may be decided as a matter of law only if there is no genuine issue of material fact when viewing the facts in the light

most favorable to the nonmoving party." *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 288 (3d Cir. 2017). The second inquiry requires courts to apply a "presumption of arbitrability only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 288 (2010). *Granite Rock* precludes application of the FAA's presumption of arbitrability before it is determined whether there is a "validly formed and enforceable arbitration agreement." *Id.*

Here, it is uncontested that the FAA governs the Arbitration Agreement. (ECF No. 28-2 at 9-10 and *see* ECF No. 81 at 7.) Moreover, Plaintiffs do not dispute the scope of the Arbitration Agreement, if it were held valid. (*See* ECF No. 81.) Rather, they argue there is no valid agreement to arbitrate because they never affirmatively agreed to be bound by the Arbitration Agreement and that because their failure to opt out of the Arbitration Agreement cannot be considered consent. (*See* ECF No. 81.)

In considering the first inquiry, whether there is a valid agreement, courts must "apply the relevant state contract law to questions of arbitrability." *Aliments Krispy Kernels, Inc.*, 851 F.3d at 288. The parties agree New Jersey law applies to the Arbitration Agreement. (ECF No. 28-2 at 11 and ECF No. 81 at 6.) Pursuant to New Jersey law, "[a]n arbitration agreement is a contract and is subject, in general, to the legal rules governing the construction of contracts." *McKeeby v. Arthur*, 81 A.2d 1, 4 (N.J. 1951) (citations omitted). "In New Jersey, a contract is enforceable where there 'is a bargained for exchange of promises or performance that may consist of an act, a forbearance, or the creation, modification, or destruction of a legal relation.'" *Jayasundera*, 2015 WL 4623508, at *3 (quoting *Martindale v. Sandvik*, 800 A.2d 872, 878 (N.J. 2002) (quoting

Restatement of Contracts § 71) (noting that a contract requires an offer, acceptance, and consideration)). Similarly, "an arbitration agreement is enforceable if it is supported by consideration and it was knowingly and voluntarily entered into." *Id.*

"In New Jersey, a waiver of rights - in the context of an arbitration agreement or otherwise - must be clear and unambiguous." *AT&T Mobility Servs. LLC v. Jean-Baptiste*, No. 17-11962, 2018 WL 3425734, at *3 (D.N.J. July 16, 2018) (citation omitted). "[A] valid waiver results only from an explicit, affirmative agreement that unmistakably reflects the employee's assent." *Leodori v. CIGNA Corp.*, 814 A.2d 1098, 1105 (N.J. 2003). For a waiver to be valid, assent "*need not* be an actual signature, but must demonstrate a willingness and intent to be bound by the arbitration provision." *Schmell v. Morgan Stanley & Co.*, No. 17-13080, 2018 WL 1128502, at *2 (D.N.J. Mar. 1, 2018) (emphasis added) (citations omitted).

This District is split on whether the failure to opt out of an arbitration agreement after receiving notice is sufficient to signify intent to be bound by the arbitration agreement, with the pendulum weighing slighting more in favor of granting arbitration in such a situation. The Court finds at least two cases that are analogous to this matter but come to different holdings. *Compare Jayasundera*, 2015 WL 4623508, at *4 (holding that a "[f]ailure to opt out of an arbitration program after receiving notice is sufficient conduct to signify acceptance") *with AT&T Mobility Servs. LLC*, 2018 WL 3425734, at *3 (finding that a failure to opt out of an arbitration program after receiving notice alone is insufficient to signify acceptance unless it is accompanied by a notification "that their continued employment signified their assent, or they were told that their

12

employment was expressly conditioned on their participation in the company's arbitration program"). The Court finds *Jayasundera* instructive and highly persuasive.

In *Jayasundera*, Macy's hired the plaintiff as a security officer. 2015 WL 4623508, at *1. Upon hiring, all employees were provided with materials regarding Macy's dispute resolution program to resolve workplace disputes through arbitration. *Id.* "As part of the new employee paperwork, employees were required to acknowledge receipt of the SIS Plan Document and complete an 'Opt-out Election Form' within thirty days of hire." *Id.* The plaintiff failed to submit the "opt-out Election Form." *Id.* Therefore, the court concluded "[f]ailure to opt out of [the] arbitration program after receiving notice [was] sufficient conduct to signify acceptance." *Id.* at *4. The court noted "Defendant made a valid offer to submit Plaintiff's claims to arbitration" and that "Plaintiff accepted the terms of the arbitration agreement by electronically signing the SIS Acknowledgement Form and failing to return the 'opt-out Election Form' within thirty days." *Id.* Lastly, the court found "[s]ufficient consideration for the arbitration agreement" because "the agreement mutually obliges Macy's and Plaintiff to arbitration all employment disputes and Plaintiff has continued his employment with Macy's." *Id.*

In *AT&T Mobility Servs. LLC*, the plaintiff was employed by AT&T and received an email with the subject heading "Action Required: Notice Regarding Arbitration Agreement," advising her that AT&T created an alternative dispute resolution program. 2018 WL 3425734, at *1. The email further informed the plaintiff that her participation in the arbitration program was optional. *Id.* Basically,

13

> AT&T would assume [the plaintiff] wished to give up her rights unless she followed their prescribed 'opt out' procedure: (1) open the Arbitration Agreement attached to the email; (2) click a link in the Arbitration Agreement to visit a separate website; and (3) follow the instructions on that separate site to register [the plaintiff's] opt out.

*Id.* In addition, whether the plaintiff opted out or not, AT&T instructed her to click the "Review Completed" button after reading the Arbitration Agreement. *Id.* The plaintiff accessed the rest of the Arbitration Agreement and clicked on the "Review Completed" button, but never opted out of the Agreement within the appropriate period. *Id.* Nevertheless, the court held the plaintiff's silence was not an affirmative agreement that reflected her assent to the arbitration agreement. *Id.* at 3. "Without any explicit indication of assent, the Court cannot ensure that Jean-Baptiste 'has agreed clearly and unambiguously' to waive her rights and participate in the arbitration program." *Id.* The court further noted that the plaintiff did not click or sign anything that said she agreed, even though she acknowledge having reviewed the arbitration agreement. *Id.* The court found "acknowledgement of receipt [was] not the same as assent to the terms." *Id.*

The Court disagrees with *AT&T Mobility Servs. LLC* interpretation of *Leodori*. In *Leodori*, the New Jersey Supreme Court considered whether an arbitration provision confined in an employee handbook was enforceable when the employee handbook contemplated the employee's signature as a concrete manifestation of assent and the employee failed to sign the "Employee Handbook Receipt and Agreement" form. *Id.* at 1102. The defendants argued that the plaintiff's receipt of the handbook, with the arbitration provision contained within it, combined with the plaintiff's continued employment and knowledge of the arbitration policy, was sufficient to

14

demonstrate the plaintiff's assent to the arbitration provision. *Id.* at 1105, 1107. The Court disagreed, finding instead that such a waiver was unenforceable "unless we find some *other unmistakable indication* that the employee affirmatively had agreed to arbitrate his claims." *Id.* at 1106 (emphasis added). The *Leodori* Court "conclude[d] that an arbitration provision cannot be enforced against an employee who does not sign *or otherwise explicitly indicate* his or her agreement to it." *Id.* at 1106 (emphasis added).

In *AT&T Mobility Servs. LLC.*, the plaintiff did provide "some other unmistakable indication" that she affirmatively agreed to arbitrate her claims by accessing the Arbitration Agreement and clicking on the "Review Completed" button. Nevertheless, the court concluded that because the plaintiff did not click or sign anything that said she agreed, even though she acknowledge having reviewed the arbitration agreement, she did not assent to the arbitration agreement. This imposes a more onerous test than intended by the New Jersey Supreme Court for establishing whether an arbitration agreement was formed. In fact, in reaching its decision, the Court in *Leodori* clarified, "'[t]o enforce a waiver-of-rights provision in this setting, the Court requires some concrete manifestation of the employee's intent as reflected in the text of the agreement itself.'" *Leodori*, 814 A.2d at 1103 (alteration in original and citation omitted). In *AT&T Mobility Servs. LLC.*, unlike *Leodori*, where the employer's agreement required a signature as a concrete manifestation of his assent, AT&T's policy only provided that failure to opt out of the arbitration agreement after receiving notice and clicking on a link to review the Arbitration agreement would indicate intent to be bound by the arbitration agreement. 2018 WL 3425734, at *1.

Furthermore, the law does not require a signature for a waiver to be valid. *Schmell*, 2018 WL 1128502, at *2 (stating assent "*need not be an actual signature*, but must demonstrate a willingness and intent to be bound by the arbitration provision") (emphasis added and citations omitted); *see* Restatement (Second of Contracts § 30 (1981) (stating "[a]n offer may invite or require acceptance to be made by an affirmative answer in words, or by performing or refraining from performing a specified act"). Therefore, the Court respectfully disagrees with the holding in *AT&T Mobility Services LLC*.

In addition, other similar, although not identical, cases have held that "[o]nce a party receives notice, acceptance of the arbitration program may be signified by failing to opt out." *Descafano v. BJ's Wholesale Club, Inc.*, No. 15-7883, 2016 WL 1718677, at *2 (D.N.J. Apr. 28, 2016); *see Schmell*, 2018 WL 4961469, at *2 (holding that "[i]f Plaintiff has notice, then his continued employment without opting out constituted assent to the Agreement, and the Court should compel arbitration his claims. If Plaintiff lacked notice, then he is not bound by the Agreement, and the Court may not compel arbitration.") (citations omitted); *Jaworski v. Ernst & Young U.S. LLP*, 119 A.3d 939 (N.J. Super. Ct. App. Div. 2015) (finding that the plaintiff manifested an intent to be bound by the arbitration agreement by continuing employment beyond the deadline specified in the terms of agreement); *Uddin v. Sears, Roebuck & Co.*, No. 13-6504, 2014 WL 1310292, at *2 (D.N.J. Mar. 31, 2014) (granting a motion to compel arbitration where the employee acknowledged receipt of the arbitration agreement and chose not to opt out of the agreement within the 30 day deadline); *see Martindale*, 800 A.2d at 879 ("[I]n New Jersey,

continued employment has been found to constitute sufficient consideration to support certain employment-related agreements.").

Plaintiffs' efforts to distinguish the above authorities are unavailing. They argue the cases are distinguishable because the employees in those cases were either notified that their continued employment signified their assent, or they were told that their employment was condition on their participation in the arbitration program. These arguments are unsubstantiated. Neither of those cases stand for the proposition that the offeror must state that continued employment is the required form of acceptance. Contrarily, "[a]n offer may invite or require acceptance to be made by an affirmative answer in words, *or by performing or refraining from performing a specified act*." Restatement Second of Contracts § 30 (emphasis added). Furthermore, "[t]o enforce a waiver-of-rights provision in this setting, the Court requires some concrete manifestation of the employee's intent *as reflected in the text of the agreement itself. Leodori*, 814 A.2d at 1103 (alteration in original and citation omitted). In *Jaworski*, for example, the concrete manifestation of intent, per the agreement itself, was continued employment. *Jaworski*, 119 A.3d at 946 ("An Employee indicates his or her agreement to the Program and is bound by its terms and conditions by beginning or continuing employment with [EY] after July 18, 2007 (the 'Effective Date').") Such requirement does not exist before this Court.

Moreover, the fact that the agreement in *Descafano* stated "employment or continued employment after the Effective Date of this Program . . . constitutes consent . . . to be bound by this Program," was irrelevant to the court's decision. Instead, the court merely concluded that "[o]nce a party receives notice, acceptance of the arbitration program may be signified by failing

to opt out." *Descafano*, 2016 WL 1718677, at *2. The words "continued employment" had no effect on the court's holding.

This case is analogous to *Jayasundera*. Like *Jayasundera*, AT&T made a valid offer to submit Plaintiffs' claims to arbitration. AT&T sent an email to Plaintiffs advising them that:

> The decision on whether or not to participate is yours to make. To help you make your decision, **it is very important for you to review the Management Arbitration Agreement linked in this email**. It provides importation information on the process and the types of disputes that are covered by the Agreement.
>
> Again, the decision is entirely up to you. To give you time to consider your decision, the company has established a deadline of no later than 11:59 p.m. Central Standard time on Monday, Feb. 6, 2012 to opt out – that is, decline to participate in the arbitration process – using the instructions below.
>
> If you do not opt out by the deadline, you are agreeing to the arbitration process as set forth in the Agreement. This means that you and AT&T are giving up the right to a court or jury trial on claims covered by the Agreement.

(ECF No. 28-3 at 54.) The Arbitration Agreement reiterated that:

> The decision whether or not to participate in the arbitration process is entirely up to you. No one will be subjected to pressure or retaliation in connection with this decision. If, contrary to this assurance, you believe you have experienced any pressure or retaliation, please contact the AT&T Hotline (888-871-2622).
>
> Should you choose not to participate, you must opt out -- that is, decline to participate in the arbitration process -- no later than 11:59 p.m. Central Standard Time on Monday, February 6, 2012. If you do not opt out by the deadline, you are agreeing to the arbitration process as set forth in the Agreement.

18

(ECF No. 28-6 at 14.) Plaintiffs accepted the terms of the Arbitration Agreement by receiving notice of the agreement, clicking on the link, and failing to opt out within the deadline. Lastly, consideration is also present in the Arbitration Agreement, since the agreement mutually obliges both parties to arbitrate all employment disputes and Plaintiffs have continued their employment with Defendants. *See Jayasundera*, 2015 WL 4623508, at *4.

Plaintiffs' argument that clicking on the hyperlink does not prove they read or fully understood the terms of the Arbitration Agreement is irrelevant. A party is "bound by the hyperlinked-agreement, even if that party did not review the terms and conditions of the hyperlinked agreement before assenting to them." *Singh v. Uber Techs. Inc.*, 235 F. Supp. 3d 656, 665 (D.N.J. 2017) (citations omitted). "[T]o hold otherwise would contravene the well settled principle that '[a] failure to read a contract will not excuse a party who signs it, nor will the party's ignorance of its obligation.'" *Id.* (quoting *ADP, LLC v. Lynch*, No. 16-01111, 2016 WL 3574328, at *5 (D.N.J. June 30, 2016) (citation omitted)). Accordingly, Defendants' Motion to Compel Arbitration is **GRANTED**.

## IV. CONCLUSION

For the reasons set forth above Defendants' Motion to Compel Arbitration is **GRANTED**.

Date: January 2, 2019 */s/ Brian R. Martinotti*
　　　　　　　　　　　　　　　　　　　　　　　　HON. BRIAN R. MARTINOTTI
　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE